IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALBINA ROQUE and VINCENTE ROQUE, individually, as heirs at law to the ESTATE OF JASON ROQUE, and on behalf of all wrongful death beneficiaries, | § § § § § | |
| Plaintiffs, | § | Civil Action No. 1:17-cv-932 |
| v. | § § § | |
| JAMES HARVEL and THE CITY OF AUSTIN | § § § § | |
| Defendants. | § | |

## PLAINTIFFS' COMPLAINT

Plaintiffs ALBINA ROQUE and VINCENTE ROQUE file this lawsuit against JAMES HARVEL and THE CITY OF AUSTIN and would show the Court and Jury the following in support thereof:

## I.
## PARTIES

1. Plaintiff, ALBINA ROQUE, is a citizen of Texas and resides in Austin, Travis County, Texas. She was Jason Roque's mother, is an heir at law to his Estate, and is a wrongful death beneficiary under Texas Law.

2. Plaintiff, VINCENTE ROQUE, is a citizen of Texas and resides in Austin, Travis County, Texas. He was Jason Roque's father and is an heir at law to his Estate, and is a wrongful death beneficiary under Texas Law.

3. Defendant, JAMES HARVEL, is an officer with the Austin Police Department. He is sued in his individual capacity, and was acting under color of law at all relevant times. He may be served at the Austin Police Department, 715 E 8th St, Austin,

Texas 78701. *Service is hereby requested at this time.*

4. Defendant, CITY OF AUSTIN, is a municipality that operates the Austin Police Department (hereafter "APD") and may be served through its City Clerk at 301 W. 2nd St., Austin, TX 78701. *Service is hereby requested at this time.*

## II.
## JURISDICTION AND VENUE

5. As this case is brought pursuant to 42 U.S.C. § 1983, this Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

6. This Court has general personal jurisdiction over Defendant Harvel as he resides and works in Austin, Texas, and over the City of Austin because it is a Texas municipality.

7. This Court has specific *in personam* jurisdiction over Defendants because this case arises out of conduct that caused the death of Jason Roque, which occurred in Austin, Travis County, Texas, within the Western District of Texas.

8. Venue of this cause is proper in the Western District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in Austin, Texas, which is within the Western District of Texas.

## III.
## FACTS

9. On or around May 2, 2017, APD received a 9-1-1 call that Jason Roque, a Hispanic twenty-year-old, had a BB gun and was threatening to harm himself.

10. When officers arrived, they saw Jason Roque and realized he appeared suicidal.

11. Jason Roque walked slowly toward the officers—still several houses down

the residential street—without making any threatening movements or gestures toward the police or others.

12. In full view of the officers, Jason Roque produced a BB gun, pointed it at his head, and asked the officers to kill him.

13. Rather than attempt to de-escalate the situation, multiple officers cornered Jason Roque and shouted at him repeatedly.

14. One officer, Defendant Harvel, was positioned several houses down, under cover of a fence. Defendant Harvel took aim at Jason Roque with a rifle.

15. At no point, when Defendant Harvel observed Jason Roque did he represent a danger to any officer or bystander.

16. Rather, Jason Roque was simply despondent, crying out for help, and at most, potentially a modest danger to himself.

17. Jason Roque turned away from the officers with the BB gun to his head, and walked several steps away, still presenting no danger to anyone except possibly himself.

18. With Jason Roque's back partially turned, Defendant Harvel inexplicitly and without justification fired his rifle.

19. The bullet struck Jason Roque but was not fatal. Immediately following the shot, Jason Roque dropped his BB gun. Every officer, including Defendant Harvel, saw the BB gun fall from Jason Roque's hand into the grass, and well beyond his reach. From this point forward, Jason Rogue was unarmed and posed no danger to anyone.

20. Despite this fact, more than 2 seconds later, Defendant Harvel fired again, striking Jason Roque.

21. While this shot inflicted great pain on Jason Roque, he did not fall to the

ground. Instead, Jason Roque stumbled several yards into the street, perhaps in an attempt to flee additional bullets.

22. Incredibly, Defendant Harvel waited two more seconds, and deliberately fired a third time, ultimately killing Jason Roque.

23. Throughout this deadly encounter, Plaintiff Albina Rogue was present and pleaded for the police to help her son, not shoot him. Moreover, prior to the encounter, Plaintiff, Albina Roque called and alerted APD that Jason Roque was suicidal and possessed a fake gun.

24. Chief of Police Brian Manley is the policymaker for the City of Austin with regard to police policies, training, and staffing.

25. Furthermore, based on information and belief, APD utilizes deadly force against unarmed individuals disproportionately when the victims are people of color and male. The following disturbing pattern of incidents have taken place over the course of more than a decade, and include the following victims:

   a. In 2003, APD Officer Scott Glasgow shot and killed twenty-year-old Jesse Lee Owens, an African-American, during a traffic stop. A Travis County grand jury indicted Glasgow for negligent homicide, though the charges were later dropped. Owens was unarmed. The City did not specifically train officers about the event or alter its training.

   b. In 2005, APD Officer Julie Schroeder shot and killed unarmed Daniel Rocha, who was Hispanic. While it entered into a $1,000,000 settlement, the City also denied publicly that its officers used excessive force—or violated policy. And, once again, the City did not specifically train officers about the incident or alter its training.

   c. In 2008, APD's Michael Olsen shot and killed unarmed Kevin Brown, who was African-American. While Olsen was fired by Chief Acevedo, the City denied in publicly filed Court documents that Olsen used excessive force. And, it did not specifically train other officers about the incident, or alter its training in any meaningful way. Instead, the city settled claims related to Mr. Brown's death for $1,000,000.

d. In 2009, APD officer Leonardo Quintana gunned down eighteen year-old Nathaniel Sanders, another African-American, who was alleged to be unarmed. Sanders died with a bullet wound to the back of his head. In the same incident, another young African-American man, Sir Lawrence Smith, was shot while simply fleeing the incoming gunfire. After waking to gunshots and glass breaking, Smith tried to escape the danger by fleeing by car—as he had every right to do—and though unarmed, Quintana shot him in the chest. No remedial action was taken by the APD as a result of the shooting. Instead, the City settled the cases for $925,000.

e. In 2012, APD officer Eric Copeland shot and killed Ahmede Bradley, an African American, after a traffic stop. During the interaction, Bradley allegedly fled on foot from the scene of the stop but was recklessly chased down by Copeland, who used deadly force in the ensuing struggle with Bradley. Again, no remedial action was taken by the APD.

f. In 2013, APD officer Charles Kleinert shot and killed Larry Jackson, Jr., after chasing him from the scene of a bank robbery that took place hours earlier. Jackson, an African-American, was unarmed, and shot in the back of the head. Instead of taking remedial action, the City paid a $1,700,000 settlement.

g. In 2014, the City refused to discipline Officer Greg White for shooting Jawhari Smith, an African-American, who had his hands up and had just dropped an empty BB gun. Instead of providing new training, the City settled the case.

h. In 2016, Officer Gregory Freeman shot and killed David Joseph, an African-American, who was naked, unarmed, and standing in an empty street before Freeman approached him and drew his weapon. While Freeman was ultimately terminated for the shooting and his conduct condemned by then-Chief Art Acevedo, the County failed to bring criminal charges against him and the City denied in public Court filings that Freeman had used excessive force. Despite the egregiousness of the shooting and paying a $3,250,000 settlement, the City did not initiate new or different training for its officers.

i. Later in 2016, Defendant Harvel—the same officer involved in this shooting—targeted and shot Ray Ojeda from some distance away. Ojeda, a nineteen-year-old, distraught young Hispanic man, was similarly not a danger to others—though he was threatening to harm himself—and Defendant Harvel knew Ojeda, like Jason Roque, was suicidal. No remedial action was taken by the APD as a result of the shooting.

26. Upon information and belief, APD did not alter its training following any of the above shootings.

27. According to APD's own internal reviews, minorities are disproportionately victims of police abuse.

28. In contrast, armed, White demonstrators are routinely allowed to roam the City (as is their right) without suffering police violence.

29. In prior litigation, an APD sergeant in charge of training police officers also testified that APD trains officers to always treat a BB gun just like a firearm—even though a BB gun plainly does not pose the same danger as a real gun.

30. Austin Mayor Steve Adler has recognized that City agencies, like the police department, have failed to stamp out institutional racism, so that additional training of officers is required to prevent "unjust outcomes"—including death at the hands of police officers—for people of color. Yet, even as City policymakers recognize this deadly problem, upon information and belief, Officer Harvel received no training to combat institutional bias before he shot and killed Roque.

31. Moreover, Officer Harvel has been disciplined and investigated on prior occasions. In December of 2010, Defendant Harvel was involved in a single-car accident with a number of officers causing $40,000 worth of damage. Although APD terminated one officer due to the incident, it gave Defendant Harvel only 5 days suspension.

32. In June 2016, Defendant Harvel shot another Hispanic man, Ray Ojeda, who was threatening to kill himself. Despite the fact that Ojeda was too far away to be a danger to anyone, Defendant Harvel decided to use deadly force, nearly killing Ojeda.

33. Even as it claims to continue to investigate Ojeda's shooting, APD continued to dispatch Defendant Harvel to scenes where he would be called upon to make life and death decisions, despite his erratic and violent history. As a consequence, Austin

citizens, especially vulnerable minorities, remained in potential danger from Officer Harvel.

34. And, less than a year after the Ojeda shooting, Defendant Harvel shot and killed Jason Roque – firing two shots after significant deliberation and when his victim was known to be unarmed and defenseless.

## IV.
## CLAIMS

### A.    § 1983 CLAIMS AGAINST DEFENDANT HARVEL

35. Plaintiffs incorporate by reference all of the foregoing and further allege as follows:

36. Defendant Harvel, who was acting under color of law, shot Jason Roque when he posed no threat of serious bodily injury or death to anyone other than himself. In fact, Jason Roque was armed with only a pistol-shaped BB gun when Defendant Harvel shot him the first time and had done nothing threatening. Then, Defendant Harvel waited several seconds and inexplicably continued to fire even after Jason Roque dropped the BB gun and began to flee, ultimately killing him.

37. As a consequence, Defendant Harvel's use of force against Jason Roque was clearly excessive to the need, objectively unreasonable in light of established law, and directly caused his death. Therefore, Defendant Harvel's actions violated Jason Roque's Fourth and Fourteenth Amendment rights to be free from excessive force/unreasonable seizure.

38. As a direct and proximate result of Defendant Harvel's actions, Jason Roque suffered greatly before dying. Plaintiffs lost their twenty-year-old son and the anguish they feel and will feel for the rest of their life is truly horrific. Plaintiff Albina

Roque was present for the ordeal and is devastated beyond words.

39. As she contemporaneously experienced the wrongful death of her son, Plaintiff Albina Roque asserts a bystander claim as well.

**B. § 1983 *MONELL* CLAIM AGAINST THE CITY OF AUSTIN UNDER FEDERAL LAW**

40. Plaintiffs incorporate by reference all of the foregoing and further allege as follows:

41. The City of Austin, had the following policies and/or practices in place when Defendant Harvel ruthlessly shot Jason Roque:

- Dispatching inadequately trained or screened officers to life and death crisis situations;
- Dispatching inadequately trained or screened officers to mental health crisis calls;
- Failing to adequately supervise officers during encounters where long range weapons are deployed;
- Failing to train officers concerning alternatives to the use of deadly force.
- Failing to train officers to de-escalate encounters involving a mental health crisis rather than resort to deadly force.
- Using excessive deadly force.
- Discriminating against minority suspects by using unwarranted deadly force at disproportionally higher rates;
- Failing to change practices following wrongful shootings or train officers about known wrongful shootings;
- Treating BB guns as real guns; and
- Failing to train on the dangers of institutional racism.

42. Each of the policies delineated above was actually known, constructively known and/or ratified by the City of Austin and its policymakers and was promulgated with deliberate indifference to Jason Roque's Fourth and Fourteenth Amendment rights under the United States Constitution. Moreover, the known and obvious consequence of these policies was that City of Austin police officers would be placed in recurring

situations in which the constitutional violations described within this complaint would result. Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

43. Consequently, the policies delineated above were a moving force of Plaintiffs' constitutional deprivations and injuries, and proximately caused severe damages.

## V.
## DAMAGES

44. Defendants deprived Jason Roque of his civil rights under the United States Constitution and under federal law. Moreover, these acts and omissions by Defendants, their agents, employees, and/or representatives, proximately caused and/or were the moving force of the injuries and damages to Plaintiffs and proximately caused and/or were the moving force of the wrongful death of Jason Roque. Accordingly, Plaintiffs in their individual capacities, in their capacities as heirs at law on behalf of the Estate of Jason Roque, and as representatives of all wrongful death beneficiaries of Jason Roque, assert claims under 42 U.S.C. §1983 and the Texas wrongful death and survivorship statutes.

45. Plaintiffs Albina and Vincente Roque, in their capacities as heirs at law on behalf of the Estate of Jason Roque, have incurred damages including, but not limited to, the following:

- physical pain and mental anguish suffered by Jason Roque before he died; and,
- funeral and burial expenses.

46. Plaintiffs, Albina and Vincente Roque, in their individual capacities asserting wrongful death claims, have incurred damages including, but not limited to, the

following:

- past and future mental anguish; and
- past and future loss of companionship, society, services, and affection with their son.

## VI.
## PUNITIVE/EXEMPLARY DAMAGES

47. As Defendant Harvel's conduct was deliberately reckless, excessive, and reprehensible, Plaintiffs assert a claim for punitive or exemplary damages against Officer Harvel.

## VII.
## JURY DEMAND

48. Pursuant to Federal Rule of Civil Procedure 48, Plaintiffs hereby request a jury trial.

## VIII.
## PRAYER FOR RELIEF

49. Accordingly, Plaintiffs ask that judgment be awarded against Defendants for:

   1) compensatory damages against all Defendants, jointly and severally,
   2) punitive damages as to Defendant James Harvel only,
   3) attorneys' fees, including reasonable and necessary expenses such as expert fees, pursuant to 42 U.S.C. § 1988,
   4) costs of court;
   5) judgment at the highest rate allowable under the law; and
   6) all other relief to which Plaintiffs are justly entitled.

Respectfully submitted,

**EDWARDS LAW**
1101 East 11th Street
Tel.  512-623-7727
Fax.  512-623-7729

By      /s/ Jeff Edwards
      JEFF EDWARDS
      State Bar No. 24014406
      jeff@edwards-law.com
      SCOTT MEDLOCK
      State Bar No. 24044783
      scott@edwards-law.com
      MICHAEL SINGLEY
      State Bar No. 00794642
      mike@edwards-law.com
      DAVID JAMES
      State Bar No. 24092572
      david@edwards-law.com

and

**STEVEN C. LEE & ASSOCIATES**
603 West 17th Street
Austin, Texas 78701
(512) 236-1300 (Telephone)
(512) 236-1313 (Facsimile)
slee@steveleelaw.com (Email)

By      /s/ Steven C. Lee
      STEVEN C. LEE
      State Bar No. 12137370

**ATTORNEYS FOR PLAINTIFFS**