IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALBINA ROQUE *and* VICENTE ROQUE, | § | |
| *Individually and as Heirs at Law to the* | § | |
| *Estate of Jason Roque, and on behalf* | § | |
| *of all wrongful death beneficiaries,* | § | |
| | § | |
| Plaintiffs, | § | 1:17-CV-932-LY-SH |
| | § | |
| v. | § | |
| | § | |
| JAMES HARVEL, *in his individual capacity,* | § | |
| *and* THE CITY OF AUSTIN, TEXAS, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are five motions regarding evidence offered with the parties' briefing on summary judgment. (Dkt. Nos. 66, 75, 76, 108, 112). The District Court referred the motions to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules").

## I. BACKGROUND

Plaintiffs Albina Roque and Vicente Roque ("Plaintiffs") filed this action against James Harvel ("Harvel") and the City of Austin ("the City") after the death of their son, Jason Roque ("Roque"). (Complaint, Dkt. No. 1). Plaintiffs allege that on May 2, 2017, the Austin Police Department received a 911 call that Jason Roque had a BB gun and was threatening to harm himself. (*Id.* ¶ 9). When officers arrived they "realized he appeared suicidal." (*Id.* ¶ 10). Plaintiffs allege that Roque made no threatening movements or gestures toward the police or anyone else. (*Id.* ¶ 11). "In full view of the officers, Jason Roque produced a BB gun, pointed it as his head, and asked the officers to kill him." (*Id.* ¶ 12). "Rather than attempt to de-escalate the situation, multiple officers cornered

Roque and shouted at him repeatedly." (*Id.* ¶ 13). Defendant Harvel, an officer with the Austin Police Department, was positioned several houses down. (*Id.* ¶ 14). Plaintiffs allege that Jason Roque "turned away from the officers with the BB gun to his head, and walked several steps away, still presenting no danger to anyone except possibly himself." (*Id.* ¶ 17). When Roque's back was "partially turned," Harvel fired his rifle at Roque. (*Id.* ¶ 18). The first shot was not fatal. (*Id.* ¶ 19). Roque immediately dropped the BB gun, and from that point forward he was unarmed. (*Id.*). At least two seconds later, Harvel fired a second shot, striking Roque again. (*Id.* ¶ 20). "Roque stumbled several yards into the street." (*Id.* ¶ 21). After two more seconds, Harvel fired a third shot, killing Roque. (*Id.* ¶ 22).

Roque's parents assert several causes of action against Harvel and the City under 42 U.S.C. § 1983 ("Section 1983") for violations of Roque's rights under the United States Constitution. (Complaint, Dkt. No. 1 ¶¶ 35-43). First, Plaintiffs claim that Harvel violated Roque's Fourth Amendment right to be free from the use of excessive force (the "excessive force claim"). (*Id.* ¶¶ 35–38). Second, Plaintiff Albina Roque asserts a bystander claim under Section 1983 because she witnessed the death of her son ("the bystander claim"). (*Id.* ¶ 39). Third, Plaintiffs assert a *Monell* claim that the City promulgated policies or practices that violated Roque's Fourth and Fourteenth Amendment rights, including, among others, inadequate training and "[d]iscriminating against minority suspects by using unwarranted deadly force at disproportionally higher rates." (*Id.* ¶¶ 25, 40-43).[1] Harvel and the City each filed a motion for summary judgment, which the parties have fully briefed. The parties also filed several motions regarding the evidence at summary judgment. Those motions are the subject of this order.

_____

[1] Plaintiffs identify this as a *Monell* claim but do not specify in the Complaint whether they assert a due process claim, an equal protection claim, or both. *See* Complaint, Dkt. No. 1 ¶¶ 40-43 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

## II.    ANALYSIS

First, Plaintiffs moved to strike seven of Harvel's exhibits. (Pls.' Mot. Strike, Dkt. No. 66). Second and third, the City and Harvel each moved to exclude the proffered expert testimony of Jeffrey J. Noble. (City Mot. Exclude, Dkt. No. 75; Harvel Mot. Exclude, Dkt. No. 76). Fourth, the City moved to preserve the confidential designation for certain police personnel records. (City Mot. Protective Order, Dkt. 108). Fifth, the City moved to strike five of Plaintiffs' exhibits. (City Mot. Strike, Dkt. 112). The Court addresses each of these motions in turn.

### A.  Plaintiffs' Motion to Strike Harvel's Exhibits (Dkt. No. 66)

Harvel seeks summary judgment on the basis of qualified immunity. (*See* Dkt. No. 57, at 8-13). Plaintiffs argue that the Court should strike Harvel's Exhibits A, B, E, F, S, X, and Y because they concern information of which Harvel was not aware before he fatally shot Jason Roque. (Pls. Mot. Strike, Dkt. No. 66, at 1). The exhibits are:

| Ex. | Dkt. No. | Description |
|-----|----------|-------------|
| A | 57-1 | Audio recording of the 911 calls by Jason Roque and Plaintiff Albina Roque |
| B | 57-2 | Transcript of the 911 call by Jason Roque |
| E | 57-5 | Certified translation of the 911 call by Albina Roque |
| F, S | 57-6, 57-19 | Affidavits of witnesses Myranda Carlson (Exhibit F) and Aimee Rangel (Exhibit S) |
| X | 57-24 | Certified translation of Austin Police Department ("APD") Detective Pelayo's Interview with Alvina Roque after the shooting |
| Y | 57-25 | Two photographs of notes left by Jason Roque |

(*See* Pls.' Mot. Strike, Dkt. 66, at 1; Harvel Resp., Dkt. 72, at 1). Plaintiffs argue that "[b]ecause Defendant Harvel was not aware of any of the facts reflected in these exhibits, he could not have considered them in his decision to use deadly force and kill Jason Roque." (*Id.*). Plaintiffs contend the exhibits therefore are irrelevant and unduly prejudicial. Harvel responds that determination of

the reasonableness of his use of force "can be assisted through evidence that shows Jason Roque's motive, intent, preparation and plan to induce Harvel to perceive the necessity to use deadly force." (Resp., Dkt. No. 72, at 2). He also argues that the evidence is not sufficiently prejudicial to outweigh this probative value. (*Id.*).

### 1. Legal Standard

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)). Even when considering a qualified immunity defense, however, the court must view the evidence in the light most favorable to the nonmovant and draw all inferences in the nonmovant's favor, *Rosado v. Deters*, 5 F.3d 119, 122-23 (5th Cir. 1993), and cannot make credibility determinations or weigh the evidence, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Accordingly, the Court must decide (1) whether Harvel "violated a statutory or constitutional right" belonging to Roque; and (2) whether "the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). The "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Hernández v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action. FED. R. EVID. 401. "Facts an officer learns after the incident ends—whether those facts would support

granting immunity or denying it—are not relevant." *Cole v. Carson*, 935 F.3d 444, 456 (5th Cir. 2019) (en banc) (quoting *Hernández*, 137 S. Ct. at 2007). "The qualified immunity analysis thus is limited to 'the facts that were knowable to the defendant officers' at the time they engaged in the conduct in question." *Hernández*, 137 S. Ct. at 2007 (quoting *White v. Pauly*, 137 S. Ct. 548, 550 (2017) (per curiam)). In *Hernández*, the Supreme Court ruled that because a border patrol agent did not know Hernández's nationality or the extent of his ties to the United States at the time of the shooting, the Court of Appeals erred in holding that the agent was entitled to qualified immunity based on those facts. *Id.; see also Cole*, 935 F.2d at 456. ("[L]ooking at the evidence in the light most favorable to the [plaintiff], [the officers] were not aware of the disturbance at the Coles' house the previous night, the alleged cache of weapons left at the Reeds' house, Ryan's alleged suicidal threat, or his threat to shoot anyone who came near him.").

### 2. Discussion

Harvel does not contend that he knew of the content of either of the 911 calls at the time that he shot Roque. (*See* Harvel Resp., Dkt. 72, at 3-6). Harvel suggests that "[t]he statements of Mrs. Roque during the 911 call clearly indicate her present sense impression that Jason Roque posed a threat to her," but concedes that "Officer Harvel did not know of Mrs. Roque's fear of Jason Roque . . . before the shooting." (*Id.* at 3, 4). Because Harvel does not dispute that he had no knowledge of either 911 call, the Court concludes that Exhibits A, B, and E of his motion are irrelevant to his motion for summary judgment. The Court therefore strikes Exhibit A (Dkt. No. 57-1), Exhibit B (Dkt. No. 57-2), and Exhibit E (Dkt. No. 57-5) from Harvel's motion for summary judgment.

Regarding the affidavits of Ms. Carlson and Ms. Rangel, who saw the shooting from inside their homes, Harvel also does not dispute that he had no knowledge of their perceptions or their testimony at the time of the shooting. (Harvel Resp., Dkt. 72, at 4-5). Harvel specifically concedes

that he "did not know that Ms. Carlson simultaneously witnessed Jason Roque's actions and shared Harvel's fear of Roque." (*Id.* at 4). Because he does not dispute that he learned of the testimony of these two witnesses only after the shooting, the Court also strikes Exhibits F and S from Harvel's motion for summary judgment. (*See* Carlson Aff., Dkt. No. 57-6; Rangel Aff., Dkt. No. 57-19).

The Court reaches the same conclusion regarding Exhibit X, the APD interview with Alvina Roque, (Dkt. No. 57-24), and Exhibit Y, the photographs of notes left by Jason Roque. (Dkt. No. 57-25). Even if, as Harvel contends, this evidence would tend to show that Jason Roque sought to take his own life by causing officers to believe that he posed an immediate and serious threat to himself and others, Harvel does not dispute that he had no knowledge of these materials at the time of the shooting. (*See* Harvel Resp., Dkt. 72, at 5). As stated above, the law is clear that facts an officer learns after an incident ends are not relevant to qualified immunity. *See, e.g., Cole*, 935 F.3d at 456 (excluding suicidal threat that officers were not aware of at the time they fired their weapons). The Court therefore strikes Exhibit X (Dkt. No. 57-24) and Exhibit Y (Dkt. No. 57-25) from Harvel's motion for summary judgment.

**B. The City's Motion to Exclude the Testimony of Jeffrey J. Noble (Dkt. No. 75) and Harvel's Motion to Exclude the Testimony of Jeffrey J. Noble at Trial (Dkt. No. 76)**

In response to both motions for summary judgment, Plaintiffs offer a declaration and expert report by Jeffrey J. Noble. (Noble Decl. & Report, Dkt. No. 65-17; Noble Decl. & Report, Dkt. No. 92-13).[2] Noble is a former Deputy Chief of Police for the City of Irvine, California, with 28 years of experience in law enforcement, including extensive experience conducting internal administrative investigations regarding the use of force and officer misconduct. (*Id.* at 5).

---

[2] Plaintiffs offer the same declaration, dated April 29, 2019, and the same expert report, dated February 1, 2019, in response to both motions for summary judgment. (Noble Decl. & Report, Dkt. No. 65-17; Noble Decl. & Report, Dkt. No. 92-13). For simplicity, the Court cites only to the declaration and expert report at Dkt. No. 65-17.

### 1. **Legal Standard**

"The admissibility of expert testimony is governed by the same rules, whether at trial or on summary judgment." *Streber v. Hunter*, 221 F.3d 701, 724 n.32 (5th Cir. 2000) (quoting *First Financial v. U.S.F. & G. Co*., 96 F.3d 135, 136 (5th Cir. 1996)). Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

District courts must act as "gatekeepers" to ensure that expert testimony is both reliable and relevant. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). "To qualify as an expert, the witness must have such knowledge or experience in his field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (citation and internal quotation marks omitted). The party seeking to admit expert testimony must demonstrate by a preponderance of the evidence that the expert is qualified and that the testimony is relevant and reliable. *Moore v. Ashland Chem. Inc*., 151 F.3d 269, 276 (5th Cir. 1998).

Expert testimony "may only assist and not replace the fact finder." *First United Fin. Corp. v. U.S. Fid. & Guar. Co*., 96 F.3d 135, 136 (5th Cir. 1996). "[T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *Salas v. Carpenter*,

980 F.2d 299, 305 (5th Cir. 1992) (quoting *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986)).

Under Rule 704, an opinion is not automatically objectionable because it addresses an ultimate issue. FED. R. EVID. 704(a). However, Rule 704(a) "does not allow a witness to give legal conclusions." *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (quoting *United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999)). Reasonableness under the Fourth Amendment or Due Process Clause is a legal conclusion. *Williams*, 343 F.3d at 435.

### 2. Noble's Testimony Regarding The City's Police Officer Training (Dkt. No. 75)

The City moves to exclude Noble's testimony regarding the City because Noble's testimony is not based on any review of the City's policies or practices, contains no specific analysis of any APD policy, practice, materials, or records, and offers a legal conclusion that will not assist the jury. (City Mot. Exclude, Dkt. No. 75). Plaintiffs do not dispute that Noble's testimony is not based on review of APD policies or records. (*See* Pls.' Resp., Dkt. No. 79, at 8). Instead, Noble's report is based on his review of depositions, diagrams, photographic evidence, mobile videos from APD patrol cars, and interviews related to this case. (Noble Decl. & Report, Dkt. No. 65-17 ¶ 8 ("I reviewed the following material in making my opinions . . . ."); *see also* Noble Tr. at 245:13-23, Dkt. No. 75-1). The only specific statement that Noble offers regarding the City is at Paragraph 38(f) of the Expert Report: "To the extent that these officers' training is consistent with such a fundamental misunderstanding of the law and generally accepted police practices regarding the use of deadly force, it would support a conclusion that the training provided by the Austin Police Department to its officer [*sic*] is dangerous and unreasonable." (Noble Decl. & Report, Dkt. No. 65-17, at 40, ¶ 38(f)).

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's

consideration. *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 580 (5th Cir. 1985). "In some cases, however, the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion. Expert opinion testimony falls into this category when that testimony would not actually assist the jury in arriving at an intelligent and sound verdict." *Id.*

Here, Noble's opinion about the City does not appear to be based on any facts or data about APD's training other than testimony from three APD officers (Harvel, Rounds, and Connelly) about the training they received. (*See* Noble Decl. & Report, Dkt. No. 65-17, at 15 ¶ 22(d)(15), 23 ¶ 25(b)(12), 39 ¶ 38(b)). That may affect the weight that the factfinder accords to Noble's opinion. *See Dixon*, 754 F.2d at 580. But Noble's opinion has at least some factual basis because he reviewed testimony from these officers about their training. *See* FED. R. EVID. 702(b); Noble Decl. & Report, Dkt. No. 65-17 ¶ 8. Accordingly, the undersigned cannot conclude that *all* testimony by Noble is unreliable and will not assist the factfinder in evaluating Plaintiffs' claims against the City. Noble may testify as an expert.

The Court, however, excludes Noble's specific testimony at Paragraph 38(f) of his Expert Report.[3] This statement is likely to confuse a jury because it implies that "dangerous and unreasonable" are the applicable legal standards to evaluate the City's liability. The Court therefore grants the City's motion to exclude Noble's testimony regarding the City with respect to Paragraph 38(f) of the Expert Report. (*See* Dkt. No. 75).

---

[3] "To the extent that these officers' training is consistent with such a fundamental misunderstanding of the law and generally accepted police practices regarding the use of deadly force, it would support a conclusion that the training provided by the Austin Police Department to its officer is dangerous and unreasonable." (Noble Decl. & Report, Dkt. No. 65-17, at 40, ¶ 38(f)).

The Court denies the motion without prejudice in all other respects. To the extent that any other specific testimony by Noble may risk confusing the jury or be legally conclusory or otherwise inadmissible, the City may object on those grounds at trial.

### 3. Noble's Testimony at Trial Regarding Harvel (Dkt. No. 76)

Harvel moves to exclude all of Noble's testimony at trial for two reasons. (Dkt. No. 76). First, Harvel argues that Noble's opinion that his use of force was excessive and objectively unreasonable is an inadmissible legal conclusion. (*Id.* at 4-5). Second, Harvel argues that Noble's opinion that "the officers here uniformly fail to recognize the difference between risk and threat" is not an applicable legal standard and will confuse the jury. (*Id.* at 3-4).

The law is clear that "[r]easonableness under the Fourth Amendment or Due Process Clause is a legal conclusion." *Williams*, 343 F.3d at 435 (holding that district court erred under Rule 704(a) by allowing the officers' testimony about the reasonableness of the shooting); *see also United States v. Teel*, 299 F. App'x 387, 389 (5th Cir. 2008) (holding that the district court properly barred defendant's expert from "going beyond consideration of the conduct to offer legal conclusions regarding whether the assault . . . constituted excessive force"). The Court therefore excludes all testimony by Noble that offers legal conclusions regarding whether Harvel's conduct constituted excessive force. Specifically, the following testimony in the Expert Report is excluded:

- "The Use of Deadly Force by Officer Harvel was Excessive, Objectively Unreasonable and Inconsistent with generally Accepted Police Practices" (Expert Report, Dkt. 67, p. 34 (section header)).

- "It is my opinion that Officer Harvel's use of deadly force in his first shot at Mr. Roque was excessive, objectively unreasonable and inconsistent with generally accepted police practices." (*Id.* ¶ 36(d)(5)).

- "Here, Officer Harvel's uses of deadly force during his second and third shots at Mr. Roque were excessive, objectively unreasonable, and inconsistent with generally accepted police practices." (*Id.* ¶ 37(e)).

- "yet even with these facts, all of the officers came to the same unreasonable belief that deadly force was justified." (*Id.* ¶ 38(d)).[4]

Noble's testimony that "consider[s] the conduct" of Harvel without crossing into legal conclusion is admissible. *See Teel*, 299 F. App'x at 389.

The Court also agrees with Harvel that Noble's expert testimony at Paragraph 38(e)—that "the officers here uniformly fail to recognize the difference between risk and threat"—is not an applicable legal standard and will confuse the jury by suggesting that there is a legal standard distinguishing between "risk and threat" that applies to the claims in this case. The Court therefore grants Harvel's motion to exclude Noble's testimony with respect to Paragraph 38(e) in its entirety.

In summary, the Court excludes Paragraph 38(e) in its entirety as well as the language listed above at Page 34 and Paragraphs 36(d)(5), 37(e), and 38(d) of the Expert Report. Because other portions of the Expert Report merely describe and analyze Harvel's "conduct" without applying legal conclusions, the Court denies Harvel's motion without prejudice regarding the remainder of the Expert Report. At trial, to the extent that Noble offers any other testimony that resembles a legal conclusion or may be inadmissible for any other reason, Harvel may object to that specific testimony.

**C. The City's Motion for Order Preserving Confidential Status of Documents (Dkt. No. 108)**

Next, the Court considers the City's motion for an order preserving the confidential status of certain police personnel files. (City Mot. Confid., Dkt. No. 108). The Protective Order in this case allows the parties to designate information as Confidential and requires that such material is filed under seal. (Protective Order, Dkt. No. 11 ¶¶ 2-3, 11). On June 7, 2019, Plaintiffs objected to the City's Confidential designation for 27 documents. (Medlock Letter, Dkt. No. 108-1, at 8-9). The

---

[4] To the extent that Noble offers any other testimony at trial that resembles a legal conclusion or may be inadmissible for any other reason, Harvel may object to that testimony at trial.

parties conferred and the City withdrew the designation for eight of the documents. (City Mot. Confid., Dkt. No. 108, at 3). The City argues that the 19 remaining documents are confidential personnel records under Texas Local Government Code § 143.089(g). (*See id.* 4-9). Plaintiffs rely on 15 of the documents in their response to the City's motion for summary judgment ("the 15 sealed exhibits").[5] (*See* Pls.' Resp. Mot. Confid., Dkt. 119, at 3).

The Texas Local Government Code provides for two personnel files for each police officer— one public and one confidential. *See* TEX. LOC. GOV'T CODE § 143.089. Under subsection (a), the Austin Police Department "shall maintain a personnel file" on each police officer that "must contain" any document relating to a commendation, "any misconduct . . . [that] resulted in disciplinary action by the employing department," and the "periodic evaluation" of the officer. *Id.* § 143.089(a). The subsection (a) personnel file is known as the "mandatory file" or the "A file." It is available to the public under the Texas Public Information Act ("TPIA"). Subsection (g) allows

---

[5] Plaintiffs rely on and seek to unseal the following exhibits. (Pls.' Resp. Mot. Confid., Dkt. 119, at 3).

    1. Dkt. No. 68-1, Ex. 2, Attachment 1, TCOLE Training Records for James Harvel;

    2. Dkt. No. 93-4, Ex. 79, Harvel's Internal Affairs History, Appx. 988–97;

    3. Dkt. No. 93-5, Ex. 80, Harvel's Online Courses, Appx. 998–1004;

    4. Dkt. No. 93-6, Ex. 81, TCOLE Personal Status Report for Harvel, Appx. 1005–15;

    5. Dkt. No. 93-7, Ex. 82, IA Inquiry Concerning Ray Ojeda, Appx. 1016–26;

    6. Dkt. No. 93-9, Ex. 84, APD Field Training Records for Harvel, Appx. 1095–97;

    7. Dkt. No. 93-10, Ex. 85, Auditor's Per Capita Rate of Fatal Shootings, Appx. 1098–99;

    8. Dkt. No. 93-11, Ex. 86, Auditor's Per Capita Rate of MH Fatal Shootings, Appx. 1100–01;

    9. Dkt. No. 93-12, Ex. 87, Washington Post Per Capita Rate of Fatal Shootings, Appx. 1102–03;

    10. Dkt. No. 93-13, Ex. 88, Citizen Review Panel Memo (August 19, 2009), Appx. 1104–05;

    11. Dkt. No. 93-14, Ex. 89, Citizen Review Panel Memo (November 16, 2011), Appx. 1106–09;

    12. Dkt. No. 93-15, Ex. 90, Citizen Review Panel Memo (August 20, 2015), Appx. 1110–13;

    13. Dkt. No. 93-16, Ex. 91, Citizen Review Panel Memo (Feb. 12, 2016), Appx. 1114–16;

    14. Dkt. No. 93-25, Ex. 100, Personnel Action re: Harvel (Jan. 21, 2018), Appx. 1117–23; and

    15. Dkt. No. 99-1, Ex. 102, Summary of August 2015 CRP Memo, Appx. 1174–76.

a second personnel file, known as the "G file." Under subsection (g), a police department "may maintain a personnel file on a . . . police officer employed by the department for the department's use, *but the department may not release any information contained in the department file* to any agency or person requesting information relating to a . . . police officer." *Id.* § 143.089(g) (emphasis added). A police department "may not release any information contained in a . . . police officer's personnel file without first obtaining the person's written permission, unless the release of the information is required by law." *Id.* § 143.089(f).

The City contends that the disputed materials are confidential because they are maintained in the G file. (*See* City Mot. Confid., Dkt. No. 108, at 4-9). Plaintiffs contend that the 15 sealed exhibits should now be de-designated and unsealed for three reasons. First, federal law, not Texas state law, governs privilege in this federal cause of action. Second, the City has not overcome the federal presumption that court filings should be public. Third, the City has no legitimate reason to keep the records sealed. (Pls.' Resp. Mot. Confid., Dkt. 119).

The City concedes that federal law governs the evidentiary privileges in this case. (City Reply Mot. Confid., Dkt. 125, at 2). However, the City argues that this Court should maintain the Confidential designation for the 15 sealed exhibits because the Texas statute protects "the government's interest in confidentiality" for sensitive materials, and because the only potential prejudice to Plaintiffs is the inconvenience of filing the document as sealed exhibits. (City Mot. Confid., Dkt. No. 108, at 6-7).

### 1. Legal Standard

"Except 'with respect to an element of a claim or defense as to which State law supplies the rule of decision,' privileges 'shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" *Am. Civil Liberties Union of Miss., Inc. v. Finch*, 638 F.2d 1336, 1342 (5th Cir. 1981) (quoting FED. R. EVID.

501). Where a plaintiff asserts only claims and defenses under Section 1983, federal law governs evidentiary privileges. *Id.* "When a litigant seeks to assert a privilege not existent in the common law but enacted by the state legislature based on unique considerations of government policy, this Court, like other courts, has tested it by balancing the policies behind the privilege against the policies favoring disclosure." *Id.* at 1343 (internal quotation marks omitted) (quoting *Fears v. Burris Mfg. Co.*, 436 F.2d 1357, 1362 (5th Cir. 1971)). The federal court considers "(1) whether the fact that the [state courts] would recognize the privilege itself creates good reason for respecting the privilege in federal court, regardless of our independent judgment of its intrinsic desirability; and (2) whether the privilege is intrinsically meritorious in our independent judgment." *Id.*

There is a federal common law presumption of public access to judicial records. *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993). Because of that presumption, "the district court's discretion to seal the record of judicial proceedings is to be exercised charily. In exercising its discretion to seal judicial records, the court must balance the public's common law right of access against the interests favoring nondisclosure." *Id.* (citation omitted).

## 2. Discussion

The Court has reviewed the 15 sealed exhibits in camera. (*See supra* n.5). In this case, the Court finds that the presumption of public access to judicial records in federal court outweighs the state law policies behind the privilege for certain police personnel records.

To begin, the statutory privilege for subsection (g) files is not absolute and it is not apparent that all 15 exhibits are privileged under Texas law. Texas courts have held that a police department's storage practices do not automatically determine whether personnel files are subject to subsection (a) or subsection (g) of the statute. *See, e.g., Abbott v. City of Corpus Christi*, 109 S.W.3d 113, 119 (Tex. App.—Austin 2003, no pet.) (explaining that the statute "does not mean

that any and all documents contained in the subsection (g) files are automatically exempt from disclosure under the [Texas Public Information Act]") (quoting *City of San Antonio v. San Antonio Express-News*, 47 S.W.3d 556, 535 (Tex. App.—San Antonio 2000, pet. denied)). "[T]he contents of a subsection (g) file are always subject to court review by *in camera* inspection to determine whether it contains information that should have been forwarded to a subsection (a) file and made subject to disclosure." *Id.*[6] For example, records stored in the subsection (g) file are not privileged if they are "not reasonably related to the individual's employment relationship." *City of San Antonio*, 47 S.W.3d at 563 (holding that Use of Force reports must be publicly disclosed because they were not reasonably related to an individual officer's employment relationship with the department). A file is less likely to be reasonably related to an employment relationship if, aside from where the file is maintained, the department uses the file to track officer practices in general. *See id.* ("Even aside from where the Use of Force reports are physically maintained, the summary judgment evidence indicates that the reports are used by Professional Standards to track use of force by the SAPD in general.").

Applying that standard here, the Auditor's Per Capita Rate of Fatal Shootings, the Washington Post Per Capita Rate of Fatal Police Shootings, and the Citizen Review Panel Memos are not reasonably related to any officer's employment because they are used to track use of force by the APD in general. (*See* Dkt. Nos. 93-10, 93-11, 93-12, 93-13, 93-14, 93-15, 93-16). Those seven exhibits are not privileged under Texas law. Having made this finding, the Court turns to consider

---

[6] The Third Court of Appeals continued that to interpret the statute "to mean that the department has the discretion to withhold certain documents from the subsection (a) file . . . and that its discretion is not subject to review. . . . 'would allow a police department to protect from disclosure any document, which would otherwise be subject to disclosure under the TPIA, by placing that document into a file labeled "departmental subsection (g) personnel file." We do not believe the legislature or the Austin Court of Appeals intended such a result.' Indeed, we did not intend such a result." *Abbott*, 109 S.W.3d at 118-19 (quoting *City of San Antonio*, 47 S.W.3d at 563).

the federal standard in this Circuit: "(1) whether the fact that the [state courts] would recognize the privilege itself creates good reason for respecting the privilege in federal court, regardless of our independent judgment of its intrinsic desirability; and (2) whether the privilege is intrinsically meritorious in our independent judgment." *Finch*, 638 F.2d at 1343.

First, even assuming Texas courts would find that all of the 15 sealed exhibits are privileged—which this Court strongly doubts—their recognition of the privilege would not create good reason for respecting the privilege in federal court, particularly because of the claims at issue here. In another Section 1983 case, this Court denied a protective order for records that were privileged and confidential under Texas statute. *See* TEX. OCC. CODE ANN. § 164.007(c); *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, No. A-08-CV-675-LY, 2011 WL 13274196, at *1 (W.D. Tex. Dec. 9, 2011). In that opinion, granting a motion to compel and denying a protective order for medical complaint records that were confidential under the Texas law, the Court explained that "[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Id.* (citing *Finch*, 638 F.2d at 1343; *United States v. King*, 73 F.R.D. 103, 105 (E.D. N.Y. 1976)). "But there is almost always such a cost to 'the special federal interest in seeking the truth in a federal question case.'" *Id.* (quoting *Finch*, 638 F.2d at 1343; *Carr v. Monroe Mfg. Co.*, 431 F.2d 384, 388 (5th Cir. 1970)). The Court continued:

> The purpose of enacting Section 1983 was to ensure an independent federal forum for adjudication of alleged constitutional violations by state officials; and as we noted in *Carr*, there is a "special danger" in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged.

*Id.* at *3 (citing *Finch*, 638 F.2d at 1343-44; *Carr*, 431 F.2d at 389).

Second, in this Court's independent judgment, the statutory privilege in Section 143.089 is not "intrinsically meritorious" because it inhibits public access to evidence that may be relevant to alleged unlawful conduct of state actors, whether that evidence is incriminating or exculpatory. Additionally, under the statute, a police department's disciplinary decision determines whether personnel files are public under subsection (a) or privileged under subsection (g). *See* TEX. LOC. GOV'T CODE § 143.089(a)-(b), (g). A police department's disciplinary decision is a poor proxy for the public value of those records.

This determination is consistent with the state law policies behind the privilege. *See Finch*, 638 F.2d at 1343. Texas Courts of Appeals have explained that the legislative intent in maintaining two personnel files, as provided in Section 143.089, is "to protect the privacy interests of police officers" and "to explicate a method by which the interest of the public in making sure that no unfit person is employed as a peace officer but, at the same time, ensuring that innocent police officers are protected from unsubstantiated innuendos and accusations." *In re Jobe*, 42 S.W.3d 174, 179 (Tex. App.—Amarillo, 2001); *see also Abbott*, 109 S.W.3d at 120.

The Court concludes that even assuming Texas courts' recognition of a privilege here, the federal common law presumption of public access to judicial records outweighs the state law policies behind the privilege for certain police personnel records, particularly in this Section 1983 case concerning the conduct of the Austin Police Department and its officers.

### 3. Unsealing and Redaction

Having reviewed all of the 15 sealed exhibits, the Court finds no other grounds that outweigh the public's common law right of access to records in this judicial proceeding. *See Van Waeyenberghe*, 990 F.2d at 848. Any sensitive information, such as an officer's identification number, may be protected through redaction. For example, Harvel's training materials appear to contain no sensitive or personal information other than his ID numbers. (*See* Dkt. Nos. 68-1, 93-

5, 93-6, 93-9). Exhibit 82 is an administrative inquiry concern an earlier shooting involving Harvel. (*See* Dkt. No. 93-7). That shooting is public knowledge.[7] The same is true for the officer-involved shootings discussed in the Citizen's Review Panel Memos. (*See* Dkt. Nos. 93-13, 93-14, 93-15, 93-16). Finally, the Auditor and Washington Post records are spreadsheets comparing per capita rates of fatal shootings by police in different U.S. cities. (*See* Dkt. Nos. 93-10, 93-11, 93-12). None contain identifying or sensitive information.

Accordingly, the Court denies the City's Motion for an Order Preserving the Confidential Status of Documents with respect to the 15 sealed exhibits briefed by the parties. The Court will unseal those exhibits after **October 28, 2019**. On or before that date, the City may submit any proposed redactions to protect sensitive personal information, such as identification numbers or Social Security numbers. The Court will consider the City's proposals before entering an order unsealing the 15 exhibits and specifying redactions, if any.

**D. The City's Motion to Strike Plaintiffs' Exhibits (Dkt. No. 112)**

The final issue before the Court is the City's motion to strike five of Plaintiffs' exhibits from their response to the City's motion for summary judgment. (*See* City Mot. Strike, Dkt. 112). Four are newspaper articles and one is a statement by a witness to another officer-involved shooting.

---

[7] The Court takes judicial notice pursuant to FED. R. EVID. 201 of a newspaper story about this shooting: Jane Wester, *Police ID 19-year-old wounded in SWAT standoff at South Austin school*, AUSTIN-AMERICAN STATESMAN, Aug. 13, 2016, https://www.statesman.com/NEWS/20160813/Police-ID-19-year-old-wounded-in-SWAT-standoff-at-South-Austin-school. Judicial notice includes "the power to take judicial notice of the coverage and existence of newspaper and magazine articles." *U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006) (citing *Jackson v. Godwin*, 400 F.2d 529, 536 (5th Cir. 1968)); *see also Holcomb v. McCraw*, 262 F. Supp. 3d 437, 449 n.3 (W.D. Tex. 2017) (overruling objection that media reports lacked authentication and foundation on the grounds that "courts can take judicial notice of the coverage and existence of news media"), *appeal dismissed sub nom. Holcomb v. Rivas*, No. 17-50605, 2017 WL 6886706 (5th Cir. Nov. 13, 2017).

### 1. The Newspaper Articles

Exhibits 45 and 46 are an audio clip and a newspaper story published by the Austin American-Statesman regarding comments reportedly made by Austin Police Chief Art Acevedo in 2016 regarding the shooting of an unarmed teenager and the violent arrest of an African-American teacher. (Dkt. Nos. 92-47 and 92-48).[8] Exhibit 50 is a newspaper article from The Guardian reporting on a study that found that Austin police use force more often in Black and Hispanic neighborhoods. (Dkt. No. 92-52). Exhibit 51 is a newspaper story from the Austin Chronicle discussing Austin Police Department reform initiatives in response to the study on police use of force. (Dkt. No. 92-53).

The City moves to exclude Exhibits 45, 46, 50, and 51 because they contain hearsay, hearsay within hearsay, and unsworn commentary by a news reporter, and because they are unduly prejudicial. (City Mot. Strike, Dkt. No. 112, at 1-3 (citing FED. R. EVID. 802, 805, 402, 403)). Plaintiffs argue that the articles are admissible under the notice exception to hearsay because they are offered not to prove the truth of the matter asserted but "to prove that the City's policymakers (like former Chief Acevedo) had notice of APD's longstanding custom of using excessive force against people of color." (Pls.' Resp. Mot. Strike, Dkt. 120, at 2 (citing FED. R. EVID. 801(c)(2)). Plaintiffs point to authorities in other jurisdictions that have admitted newspaper articles over a hearsay objection to show a municipality's alleged notice of a custom of police violence. (*See id.* (citing *Carter v. Dist. of Columbia*, 795 F.2d 116, 123 (D.C. Cir. 1986) (admitting newspaper articles regarding past police misconduct for purpose of showing notice to municipality); *McAllister v. New York City Police Dept.*, 49 F. Supp. 2d 688, 705 n.12 (S.D. N.Y. 1999)

---

[8] Exhibit 45 is an audio excerpt from a video news report by the Austin American-Statesman provided to the Court on a DVD. The entry on the Court's electronic docket accordingly is blank. (*See* Dkt. No. 92-47).

("Newspaper articles are hearsay … although they might be admissible to show notice to the City of allegations of misconduct."); *White v. City of Birmingham, Ala.*, 96 F. Supp. 3d 1260, 1274 (N.D. Ala. 2015) (newspaper articles admissible to show notice to city of "a need for additional excessive force training")).

As a general rule, "[n]ewspaper articles . . . are hearsay and therefore do not constitute competent summary judgment evidence." *Cano v. Bexar Cty., Texas*, 280 F. App'x 404, 406 (5th Cir. 2008) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005)). The articles are not admissible to prove the truth of Plaintiff's allegation that improper practices existed. The Court agrees, however, that the newspaper articles may be admitted to show that the City of Austin had notice of complaints of discriminatory policing and excessive use of force. *Cf. United States v. Chavis*, 772 F.2d 100, 105 (5th Cir. 1985) (holding that Texas Attorney General consumer protection complaint files were admissible because "the complaint was not admitted to prove the truth of the matter asserted in it, but rather as proof of notice" that the company had notice of consumer complaints). The Court therefore denies the City's motion to exclude the newspaper articles contained in Exhibits 45, 46, 50, and 51. The parties may raise an appropriate limiting instruction at trial.

## 2. The Witness Statement

Exhibit 99 is a witness statement by Rickia Hunt regarding another officer-involved shooting that took place on March 18, 2014. (Exhibit 99, Dkt. 92-103).[9] The City objects that the statement is inadmissible hearsay, irrelevant, and unduly prejudicial. (City Mot. Strike, Dkt. No. 112, at 3 (citing FED. R. EVID. 402, 403, and 802)). Plaintiffs argue that the witness statement is an admissible opposing party's statement under Rule 801(d)(2) because it was recorded for Ms. Hunt

---

[9] Exhibit 99 is filed under seal because the City has designated it as Confidential.

by APD officers "'whom [the City] authorized to make a statement on the subject,' or 'was made by [the City's] agent or employee on a matter within the scope of that relationship while it existed.'" (Pls.' Resp. Mot. Strike, Dkt. 120, at 3 (citing FED. R. EVID. 801(d)(2))). The text of the statement states that the witness, "after being by me duly sworn, upon oath deposes and says," (*id.* at 1), but there are no signatures in the spaces provided either for the Affiant or the Peace Officer. (*Id.* at 4). The City did not file a reply brief in support of its motion to strike Plaintiffs' exhibits.

Under Federal Rule of Evidence 801(d)(2)(D), a statement offered against an opposing party that "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay. *Poole v. Dhiru Hosp., LLC*, No. SA-18-CV-636-XR, 2019 WL 3845454, at *4 (W.D. Tex. Aug. 15, 2019). However, the statement here appears to be a statement by a third-party witness that was merely transcribed by an APD officer. Plaintiffs offer no authority for the proposition that the officer "made" the statement on these facts. The Court finds that Plaintiffs have not met their burden to show that the witness statement at Exhibit 99 is admissible.

Plaintiffs may re-urge the admissibility of Exhibit 99 at trial if they so choose. Because the witness statement concerns an officer-involved shooting in which an APD officer allegedly "shot a young person of color who had already discarded a BB gun," the statement may be relevant to Plaintiffs' claim that the City acted with indifference to a known risk of excessive use of force by police officers. (Pls.' Resp. Mot. Strike, Dkt. 120, at 2; *see also generally* Pls.' Resp. City Mot. Summ. J., Dkt. No. 92). The Court therefore grants the City's motion to strike Plaintiffs' Exhibit 99 without prejudice to Plaintiffs offering the evidence at trial.

## III.   CONCLUSION

Accordingly, **IT IS ORDERED** that Plaintiffs' Motion to Strike Harvel's Exhibits A, B, E, F, S, X, and Y (Dkt. No. 66) is **GRANTED**. The Clerk of Court is directed to **STRIKE** the exhibits at Dkt. No. 57-1, 57-2, 57-5, 57-6, 57-19, 57-24, and 57-25.

**IT IS FURTHER ORDERED** that the City of Austin's Motion to Exclude Expert Opinions and Testimony of Jeffrey Noble (Dkt. No. 75) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** with respect to Noble's testimony at Paragraph 38(f) in its entirety. (Noble Decl. & Report, Dkt. No. 65-17, at 40, ¶ 38(f)). All other objections to Noble's testimony by the City are **DENIED WITHOUT PREJUDICE** to re-urging them at trial.

**IT IS FURTHER ORDERED** that Harvel's Motion to Exclude Expert Opinions and Testimony of Jeffrey Noble at Trial (Dkt. No. 76) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** with respect to the following testimony:

- Paragraph 38(e) in its entirety. (Noble Decl. & Report, Dkt. No. 65-17, at 40, ¶ 38(e)).

- "The Use of Deadly Force by Officer Harvel was Excessive, Objectively Unreasonable and Inconsistent with generally Accepted Police Practices" (Expert Report, Dkt. 67, p. 34 (section header)).

- "It is my opinion that Officer Harvel's use of deadly force in his first shot at Mr. Roque was excessive, objectively unreasonable and inconsistent with generally accepted police practices." (*Id.* ¶ 36(d)(5)).

- "Here, Officer Harvel's uses of deadly force during his second and third shots at Mr. Roque were excessive, objectively unreasonable, and inconsistent with generally accepted police practices." (*Id.* ¶ 37(e)).

- . . . "yet even with these facts, all of the officers came to the same unreasonable belief that deadly force was justified." (*Id.* ¶ 38(d)).

All other objections to Noble's testimony by Harvel are **DENIED WITHOUT PREJUDICE** to re-urging them at trial.

**IT IS FURTHER ORDERED** that the City's Motion for an Order Preserving the Confidential Status of Documents (Dkt. No. 108) is **DENIED** with respect to the 15 sealed exhibits listed at Footnote 5 of this Order. On or before **October 28, 2019**, the City may submit any proposed redactions to protect sensitive personal information, such as identification numbers or social security numbers. The Court will consider the City's proposals before entering an order unsealing the 15 exhibits and specifying redactions, if any.

**IT IS FINALLY ORDERED** that the City's Motion to Strike Plaintiffs' Exhibits 45, 46, 50, 51, and 99 (Dkt. No. 112) is **GRANTED IN PART AND DENIED IN PART**. The motion is **DENIED** with respect to Exhibits 45, 46, 50, 51 and **GRANTED** with respect to Exhibit 99.

**SIGNED** on October 16, 2019.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE